STATE of Missouri, Respondent,

v.

Joseph W. PROBY, Appellant.

Joseph W. PROBY, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 17581, 18426.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 23, 1993.

Susan K. Eckles, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Hugh L. Marshall, Asst. Atty. Gen., Jefferson City, for respondent.

PARRISH, Chief Judge.

Joseph W. Proby (defendant) was convicted, following a jury trial, of burglary in the

second degree, § 569.170,[1] and stealing property of a value of at least $150, § 570.030.-3(1). He was charged and sentenced as a prior and persistent offender. § 558.016, RSMo Supp.1990. Following his sentencing and incarceration, defendant filed a pro se Rule 29.15 motion. Counsel was appointed and an amended motion filed. After an evidentiary hearing, the motion court filed written findings of fact and conclusions of law and denied the motion. Defendant appeals from the judgment of conviction (No. 17581) and from the order denying the Rule 29.15 motion (No. 18426). The appeals were consolidated in accordance with Rule 29.15(*l*). This court affirms.

## No. 17581

This court accepts as true the evidence that tends to prove defendant's guilt, together with all reasonable inferences that support the verdict of the jury, and disregards all evidence and inferences to the contrary. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993). In assessing the sufficiency of the evidence, the determination to be made is whether a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *Id.*

Shortly after midnight the morning of January 6, 1991, two police officers received a report of a burglary at a package liquor store, the C & W Package Store, on Highway 412 in Hayti, Missouri. The police officers proceeded to that location in separate vehicles. They parked their vehicles a block away from the store and walked toward the store. Officer Sheckell approached the store from the east. Officer Summers approached the store from the south.

As Officer Sheckell stepped around a corner of a building adjacent to the liquor store, he saw a man who he later determined to be defendant throw an iron bar to the ground and run. Officer Sheckell called to defendant telling defendant that he was a police officer and to stop. Defendant continued running. Officer Sheckell ran after defendant. Two warning shots were fired. After defendant had run "somewhere around three hundred feet," defendant slipped—it had been raining for some time—and fell to the ground. Defendant was face down on the ground. Officer Sheckell "patted him down" finding a knife with a bent blade in defendant's right rear pocket.

The knife in defendant's pocket was open. It could not be closed because of the bent blade. Officer Sheckell described its condition, "It's bent. It appears that it has been used to pry something with."

After apprehending defendant, Officer Sheckell retrieved the iron bar that he had seen defendant throw to the ground. He found the liquor store's cash register about 50 feet from the store. "It was next to the bar that Mr. Proby threw down." Officer Sheckell described its condition, "The top portion of it is made of plastic and it was busted away from the lower portion which contains the cash drawer." Officer Sheckell was asked about his examination of the cash register. He testified:

Q. [By the Prosecuting Attorney] And what, if anything, did you note from your examination?

A. There was change in the register, as well as some cards that said C & W Package on the cards.

"[A] little over $7.00 in change" was found in defendant's right front pocket after his arrest. "Just over $18.00" in change was found in the cash register and on the ground around it. Two unopened packages of Kool cigarettes were found on the ground next to the liquor store by a broken window. The packages of cigarettes "were wet, but were intact." There were wet footprints inside the building that appeared to match the tread on the shoes defendant was wearing.

Later the same morning, a neighbor to the liquor store found "a tan glasses case and a burgandy [sic] Crown Royal bag with a drawstring on it"—items that had been kept in the liquor store beneath a counter. The items were found in the neighbor's yard "to the west of the crime scene" along the route where defendant ran when he was chased by Officer Sheckell.

---

1. References to statutes are to RSMo 1986 unless stated otherwise.

The C & W Package Store is owned by Charles Jones and Wanda Jones. On the night of the robbery, Mr. Jones closed the store at 12:00 o'clock. Mr. Jones was acquainted with defendant. Defendant came by the store the night of the burglary "twice prior to closing," but did not come into the store. "He came by the window." (After 6:30 p.m. customers were not allowed inside the store, they were served through a service window.) The last time defendant came by was about 15 minutes before the store closed for the night. During the evening, defendant purchased "[a] half-pint of gin, a cigarette lighter, [and] a pack of Kools" at the store.

Mr. Jones was called back to his store because of the burglary "[a]bout a[n] hour and a half" after he had closed. He was asked the following questions and gave the following answers regarding the condition of the store:

Q. And when you got there what did you find in regard to the condition of your package store?

A. The window just before the service window was broke, broke out. The door had been banged—Somebody had tried to pries [sic] into the door. The cash register was missing; you could see that from the window. We were not allowed to go inside the building. The cop had secured the building and told us not to go in until they got through investigating.

Q. Okay. When you closed up your place of business there about midnight, was there any water on the floor in there?

A. No.

Q. And did you look in through that window after you got back, through the broken window?

A. Yes.

Q. Okay. And you could tell your cash register was gone?

A. Yeah.

Q. Was there any—Did you leave any money in the cash register when you closed up?

A. There was some change in it.

Q. Do you know of your best judgment about how much?

A. Oh, close to $30.00.

Q. And did you have occasion to, when you looked through the window, to look at the floor?

A. Yes.

Q. And what'd you see?

A. A lot of different footprints.

Q. You saw a lot of footprints?

A. Yes.

Q. Were any of those your footprints?

A. Yeah, I think there were at the— not at the window—behind the counter where I service at, work at, yeah.

Q. Okay. What kind of shoes were you wearing that night?

A. Oh, some—They was work shoes. Same kind I got on now, 'cept they was black.

A. Okay. You weren't wearing tennis shoes, were you?

A. No.

Mr. Jones believed some packages of Kool cigarettes had been stolen. He surmised that the cigarettes were stolen because the container in which they were kept would hold 10 packages, but after the burglary there were "four or five still in there," and packages of Kool cigarettes were found outside the store, on the ground, near the broken window through which the burglar was thought to have entered.

Photographs were taken of the footprints inside the store. The photographs were admitted in evidence as State's Exhibits 16, 17, 18, 19 and 20. The shoes that defendant had worn the night he was arrested were admitted in evidence as State's Exhibits 12–A and 12–B. The photographs were taken by Officer Barry McKay, City Marshal for the City of Hayti. Prior to offering the photographs of the footprints in evidence, Officer McKay was asked the following questions and gave the following answers:

Q. And did you at any time make any comparison between these footprints that you saw and the tennis shoes taken from the Defendant?

A. My comparison was they were the same tread type.

Q. And what similarities did you observe?

A. The, the curved S-shaped tread pattern on the bottom of the shoe matches the tread pattern left in the photograph.

Officer McKay then showed the jury the part of the tread pattern on the shoes that he believed matched the tread pattern depicted in a picture of the footprints. He was asked if he had an opinion as to whether the shoes that defendant wore made the footprints. He answered, "In my opinion those shoes could have made those footprints." The trial court admitted the photographs of the footprints in evidence.

■ The first of defendant's points on appeal directed to the judgment of conviction in his criminal case asserts that the state failed to present sufficient evidence from which the jury could have found him guilty. He contends that the state failed to prove that he knowingly entered a building and appropriated property of another without the owner's consent and with the purpose of depriving the owner of the property.[2]

The evidence in the criminal case was entirely circumstantial. However, it was sufficient for a reasonable juror to have found that defendant unsuccessfully attempted to pry open a door to the liquor store and then broke a window and entered the building unlawfully, without the consent of the owners of the premises. A reasonable juror could have found that defendant removed the cash register from the premises intending to deprive its owner of the cash register and its contents, thereby appropriating it for defendant's own use; and that the defendant intended to do so when he entered the building. *See State v. Snyder,* 502 S.W.2d 339, 341–42 (Mo.1973); *State v. Tincher,* 797 S.W.2d 794, 795–96 (Mo.App.1990); *State v. Parham,* 741 S.W.2d 693, 695–96 (Mo.App. 1987). The point is denied.

Defendant presents one other point directed to his criminal conviction. He contends the trial court committed plain error in instructing the jury on the meaning of "reasonable doubt." The jury was instructed in accordance with MAI–CR3d 302.04. Defendant relies on *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), and its progeny for the proposition that this was error. This issue has previously been considered and determined contrary to defendant's contention. The definition of reasonable doubt as stated in MAI–CR3d 302.04 is "constitutionally sound." *State v. Ervin,* 835 S.W.2d 905, 924 (Mo. banc 1992). The point is denied.

### No. 18426

■ Defendant's appeal from the motion court's order denying his Rule 29.15 motion is based on a claim of ineffective assistance of trial counsel. Defendant asserts that he did not receive effective assistance of counsel because his trial counsel failed "to locate and call a key defense witness" whose testimony, he contends, "could have exculpated" him.

At trial, defendant's counsel offered in evidence a report prepared by Dr. R.C. Briner, Director of the SEMO Regional Crime Laboratory. The state objected to its admission on the basis of hearsay. The trial court sustained the objection.

Defendant's trial counsel caused a subpoena to be directed to Dr. Briner to compel his attendance at trial as a witness for defendant. The request for the subpoena was not received by the circuit clerk's office until the afternoon of April 12, 1991. Defendant's trial was held Monday, April 15, 1991. Dr. Briner was not present at trial. The court file did not reflect that he had been served with the subpoena.

The motion court's findings included:

Movant has failed to prove that Dr. Briner would testify in any way that would provide a viable defense. Therefore, the facts regarding Dr. Briners [sic] failure to ap-

---

**2.** § 569.170.1 provides, as pertinent here:

A person commits the crime of burglary in the second degree when he knowingly enters unlawfully ... in a building or inhabitable structure for the purpose of committing a crime therein.

§ 570.030.1 provides, as applicable to this case:

A person commits the crime of stealing if he appropriates property ... of another with the purpose to deprive him thereof, ... without his consent....

pear are insufficient for a finding of ineffective assistance of counsel.

This court's review of a claim of ineffective assistance of trial counsel is two-fold.

[T]he focus is on (1) counsel's performance, and, (2) if that performance is deficient, whether prejudice resulted from counsel's breach of duty.

*Driscoll v. State,* 767 S.W.2d 5, 7 (Mo. banc 1989). "The action taken by the motion court on the Rule 29.15 motion will be affirmed unless the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(*l*)." *State v. Morgan,* 830 S.W.2d 41, 43 (Mo.App.1992).

The testimony at trial regarding the comparison of photographs of footprints at the burglary scene and tread on the shoes worn by defendant the night of the burglary was that of Officer McKay. After pointing out what he believed were similarities in the footprints left on the floor and the tread on defendant's shoes, Officer McKay stated the opinion that "those shoes could have made those footprints." Upon cross-examination, Officer McKay explained further:

Q. [By defendant's trial counsel] Chief McKay, you have indicated that the prints that were made from the tread design, you would say that they were made by this pair of Reeboks; is that correct?

A. A like Reebok, yes, sir.

Q. I beg your pardon?

A. A shoe with a like tread, yes, sir.

Q. So you're saying they could of been made by another pair of Reeboks and not these.

A. That's possible.

The report prepared by Dr. Briner that defendant's trial counsel attempted to have admitted in evidence was consistent with Officer McKay's testimony. It stated, with respect to the shoes and photographs of the footprints:

*SPECIMENS SUBMITTED:*

I) Items submitted on 1/8/91

One sealed bag containing

1) One pair of Reebock [sic] brand, (L = B, R = A), size 9, black tennis shoes—both shoes were in sealed brown bags

.   .   .   .   .

II) Items submitted on 1/23/91—one sealed brown envelope containing several pictures and negatives of the crime scene

III) Items submitted on 1/29/91 by regular mail—one sealed brown envelope containing several pictures and negatives from the crime scene

*RESULTS:*

Item II exhibits similar class characteristics in relation to make of manufacturer. However, results are inconclusive on individual characteristics based on lack of clarity in the pictures.

.   .   .   .   .

Defendant does not suggest that Dr. Briner would have provided evidence, had he testified, other than the information that was included in his report. The report indicated that the photographs of the footprints displayed "similar class characteristics" of the make of shoes defendant wore the night of the burglary, but that "results are inconclusive on individual characteristics" of the particular shoes defendant wore. This was consistent with the evidence at trial. The testimony was that the footprints were made by shoes "with a like tread" to those defendant had worn. Had Dr. Briner testified in accordance with his report, his testimony would have provided only cumulative evidence to that given by Officer McKay. Defendant was not prejudiced by Dr. Briner's failure to testify.

Having determined that defendant was not prejudiced by Dr. Briner's failure to testify, it is not necessary to address whether trial counsel was deficient in failing to have Dr. Briner present. Defendant did not meet the requisite burden of proof to show ineffective assistance of counsel. *See State v. Vinson,* 800 S.W.2d 444, 448–49 (Mo. banc 1990). The findings of the motion court are not clearly erroneous. The point is denied.

The judgment of conviction in No. 17581 is affirmed. The order dismissing the Rule 29.15 motion in No. 18426 is affirmed.

SHRUM and MONTGOMERY, JJ., concur.