**STATE of Missouri, Plaintiff–Respondent,**

v.

**James L. WOODSON, Defendant–Appellant.**

**No. 25384.**

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 12, 2004.

Kent Denzel, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Lisa M. Eaton, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Presiding Judge.

James L. Woodson (defendant) appeals convictions for two counts of the Class A felony, robbery in the first degree. § 569.020.[1] Defendant was charged as, found to be, and sentenced as a persistent offender. *See* § 558.016. This court affirms.

"For purposes of appellate review, evidence that supports the verdict is taken as true, together with all reasonable inferences favorable to the verdict. Evidence to the contrary is disregarded." *State v. Scott,* 78 S.W.3d 806, 808 (Mo.App.2002).

Defendant was identified as the person who committed a robbery of a Citgo service station in Cape Girardeau on August 19, 1999. Shannon Shipman and his brother, Anthony Shipman, had stopped at the Citgo station. Anthony went inside the store while Shannon waited in a truck outside. While seated in the truck, Shannon heard and saw the robbery committed. Shannon explained:

> When I pulled up to the Citgo, my brother got out of the truck, was going in to get a cup of coffee. I was plugging my cell phone in. As soon as he walks

in, I see the gentleman kind of take him and the door was still partially open, and it sounded like he said, "Get on the floor,". . . .

Shannon was parked directly in front of double doors that led into the store. He told the trial court he was "kind of hunkered down" in his truck; that he saw the robber come out of the store. He said the robber "walked out, took his do-rag off or whatever you call it, and commenced to look both sides and took off running." Shannon saw the robber's face. He called 911 and reported the robbery.

Shannon gave the police a statement the day of the robbery. They contacted him again at a later date to obtain his assistance in constructing a computerized drawing based on his recollection of the robber's appearance. He later identified defendant as the robber from photographs the police provided. At trial Shannon Shipman identified defendant as the robber.

Shortly after midnight on August 22, 1999, a Cape Girardeau Pizza Hut was robbed. A person who appeared to have a gun entered the store and shouted that he wanted everyone down on the ground, and he wanted the money from the cash register. An employee of Pizza Hut, Louis Madison Hogan, Jr., explained:

> Well, the register was locked and about three of them got down on the ground and I was still standing, and I paused there for a second and my dad went to the back, grabbed the phone and dialed 911, and the next thing I know, he had his back turned and I went behind him. After a few seconds his back was turned, I noticed on the gun that it was not real, through the hole of the barrel because it was closed off.

---

1. References to statutes are to RSMo 1994.

Louis was asked what happened next. He answered, "He knocked the phone out of my dad's hand, left it hanging and he hit him and he fell towards the stove, and that's when I came in to jump, jumped right behind him and tried to knock him down,...." During the altercation, the robber knocked the cash register off a counter. It came open. The robber got money from it and ran out the back door of the store. Louis described the robber as a "[b]lack guy, dark clothes, base ball [sic] cap and something over his face."

Cape Girardeau Police Officer Rodney Wayne Barker received a radio call reporting an armed robbery in progress at the Pizza Hut. He responded to the call, arriving at the Pizza Hut in "[p]robably a minute or less." He reported what he saw:

> I saw two white males that appeared to be Pizza Hut employees lying on the floor. There was change from the cash register strewn out all over the floor, and then I saw another male subject appear in a doorway, but I could only see like his shoulder and his arm.

Officer Barker called for backup. When he returned his attention to the building, he heard a noise and saw a black male wearing a dark blue shirt and pants run from the building. Officer Barker chased the man west across the parking lot. He explained, "Then he jumped a wall on the west side of the parking lot and started running up the hill in a southwesterly direction towards the Southeast Missouri Hospital parking lot." Officer Barker continued the chase. The man disappeared over the top of a hill. When Officer Barker reached the top of the hill, he could not see him. Another officer reported he had spotted an individual running west on Lacey Street. The other officer then reported he no longer had the subject in sight.

What Officer Barker characterized as "a suspicious vehicle" was found parked in a parking lot behind the Southeast College of Nursing. The driver's door to the vehicle was ajar. Keys were in the ignition. What appeared to be a change of clothing was on the back seat area of the car. A pair of tennis shoes was on the front floorboard. The engine was warm. The vehicle was impounded and towed to the police department where it was examined. A Missouri driver's license issued to defendant was found in the glove compartment.

At approximately 3:20 a.m., defendant came to the police department and reported his car had been stolen from the parking lot of Southeast College of Nursing; that he parked it there about 11:00 p.m. and found it missing at 2:30 a.m. Defendant was permitted to leave the police station following his report.

After reviewing additional evidence, police officers left the station to go to defendant's residence in an attempt to arrest him. Officer Barker testified:

> Well, prior to getting to that location, I saw him walking on the street near Morgan Oak and Pacific. I stopped. He walked up to me and I told him to place his hands on the hood of my vehicle and he did that. He said, "What's wrong, what's wrong?" And I said, "You are under arrest for robbery," and at that point he jerked away from me and started backing away, and I told him to stop, he was under arrest, and then he just turned around and ran, and again we were in a foot pursuit.

Officer Barker was unable to apprehend defendant. Later that morning, about 4:45 a.m., officers were watching defendant's home when defendant came from the residence. He ran. The officers were unable to catch him.

On August 23, 1999, Police Officer John Brown received a call from a person who stated she was defendant's sister. She discussed the possibility of defendant com-

ing to the police station. About two hours later, defendant came to the station.

Defendant asserts four points on appeal. This opinion first addresses Point II. Point II contends the trial court erred in denying defendant's motion to sever the two counts of robbery in the first degree; that those counts were improperly joined; that the two alleged offenses "were not part of the same transaction, a common scheme or plan, or sufficiently of the same of [sic] similar character." Defendant argues the alleged offenses were such that "the jury was likely to consider the evidence of each robbery against [defendant] in considering whether he was involved in the other"; that defendant wished to testify in one of the cases but not the other.

■ Prior to trial defendant filed a written motion to sever the offenses charged as Count I and Count II alleging that joinder of the offenses for trial would result in substantial prejudice to defendant. The motion was denied. The counts were tried together.

Rule 23.05 provides that the State may charge, in the same indictment or information, all offenses "of the same or similar character." We review the trial court's refusal to sever offenses in two steps. *State v. Davis*, 860 S.W.2d 369, 372 (Mo.App. E.D.1993). First, we determine, based on the State's evidence only, whether the offenses were properly joined as a matter of law. *Id.; State v. Morrow*, 968 S.W.2d 100, 109 (Mo. banc 1998). If not, then prejudice is presumed and we must reverse and order new separate trials of the offenses. *Morrow*, 968 S.W.2d at 109. If joinder was proper, however, then we consider whether the trial court abused its discretion in refusing to sever. *Davis*, 860 S.W.2d at 372. [Footnote omitted.]

■ *State v. Dizer*, 119 S.W.3d 156, 160–61 (Mo.App.2003). *Dizer* further explains:

Liberal joinder is favored to achieve judicial economy. [*Davis, supra.*] Joinder is proper if the manner in which the crimes were committed is so similar that it is likely the same person committed all charged offenses. *Id.* Similar tactics are sufficient to constitute acts "of the same or similar character," but identical tactics are not required. *State v. Tobias*, 873 S.W.2d 650, 653 (Mo.App. E.D. 1994). Rather, joinder is permissible if the tactics "resemble or correspond in nature." *State v. Vinson*, 834 S.W.2d 824, 827 (Mo.App. E.D.1992). . . .

*Id.* at 161. "Comparable tactics, which resemble or correspond in nature, are sufficient to establish that offenses are of the same or similar character; the tactics need not be identical." *State v. Hemme*, 969 S.W.2d 865, 869 (Mo.App.1998), *citing State v. Howton*, 890 S.W.2d 740, 744 (Mo. App.1995).

■ Both counts in the information charged robbery in the first degree. The offenses were committed within three days of one another at Cape Girardeau. Both were committed against store employees. The robber in both cases displayed a gun and ordered the people present in each store to get down on the floor. At least one witness at each robbery believed the gun the robber displayed was a fake gun. The robber at each scene wore a mask over his face. The robber fled each robbery scene on foot. The tactics employed in the course of each robbery were sufficiently comparable for the offenses to be characterized as being of the same or similar character. Joinder was appropriate.

■ Did the trial court abuse its discretion in failing to sever the counts for separate trials?

The key question in determining whether severance should be granted is one of prejudice. The defendant must make a particularized showing of sub-

stantial prejudice. There must be both an abuse of discretion and a clear showing of prejudice before a denial of severance can be reversed. In determining prejudice the court should consider, among other relevant factors, the number of offenses charged, the complexity of the evidence, and whether the trier of fact is able to distinguish the evidence and apply the law intelligently to each offense. [Citations omitted.]

*State v. Hughes,* 787 S.W.2d 802, 804 (Mo. App.1990). "Prejudice is shown through evaluating the number of charges, the complexity of the evidence, and whether the jury could distinguish the evidence pertaining to each charge and apply the law appropriately to each offense." *State v. Hopkins,* 947 S.W.2d 826, 832 (Mo.App. 1997).

■ There were only two charges. The evidence was not complex with respect to either charge. The evidence directed to each charge was simple, distinct, and uncomplicated. This court perceives nothing that would have prevented the jury from distinguishing the evidence applicable to each offense.

In Point II, defendant includes that he "wished to testify in one case but not the other" as a reason the trial court's denial of his motion to sever was error. The only reference to this assertion in the argument that follows Point II is the first sentence that states, "At a pretrial hearing on November 18, 2002, [defendant] moved to sever the two counts for trial, because he wanted to testify in one case but not the other."

■ The state argues this constitutes a failure to address or develop an argument with respect to the issue Point II attempts to raise regarding a desire to testify. The state suggests that, therefore, defendant abandoned this issue. *See State v. Kenney,* 973 S.W.2d 536, 548 (Mo.App.1998), ("Where an appellant's point is not devel-

oped in the argument portion of her brief, it is deemed abandoned"). *See also State v. Khoshaba,* 878 S.W.2d 472, 475 (Mo.App. 1994). This court agrees. Defendant's mere recital of a stated basis for a claim of error, without further development or explanation and without citation of authority for the basis asserted, is a failure to develop an argument in support of the claim of error and, therefore, amounts to its abandonment.

Furthermore, no prejudice was shown. In *State v. White,* 755 S.W.2d 363, 368 (Mo.App.1988), a defendant testified with respect to one charged offense and invoked the Fifth Amendment when cross-examined with respect to another charged offense. *White* held that this was proper; that the defendant in that case was not prejudiced. Were defendant sincere in his desire to testify as to only one of the charged offenses, he could have done so without prejudice. The trial court did not abuse its discretion by failing to grant defendant's motion for severance. Point II is denied.

Point I contends the trial court erred in denying defendant's motion for judgment of acquittal at the close of all the evidence and in entering judgment of conviction as to Count II because "the evidence was insufficient to establish beyond a reasonable doubt that [defendant's] gun appeared to be real." Defendant argues that the jury, therefore, "could not have reached a subjective state of near certitude that [defendant] displayed or threatened the use of what appeared to be a deadly weapon or dangerous instrument."

In determining if the evidence adduced, as a matter of law, supports the conviction that is appealed, this court determines whether there was sufficient evidence from which a reasonable juror might have found defendant guilty beyond a reasonable doubt. *State v. Chaney,* 967 S.W.2d 47, 52 (Mo. banc), *cert. denied,* 525 U.S. 1021, 119

S.Ct. 551, 142 L.Ed.2d 458 (1998); *State v. Parnell,* 21 S.W.3d 896, 899 (Mo.App.2000). Great deference is afforded the finder of fact. *Chaney,* 967 S.W.2d at 52.

Section 569.020.1 states the elements of the offense of robbery in the first degree:

A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime,

(1) Causes serious physical injury to any person; or

(2) Is armed with a deadly weapon; or

(3) Uses or threatens the immediate use of a dangerous instrument against any person; or

(4) Displays or threatens the use of what appears to be a deadly weapon or dangerous instrument.

■ The verdict-directing instruction for Count II, the charge about which Point I complains, instructed with respect to the use of a device to aid in the commission of the theft, that the jury had to find "that in the course of taking the property, the defendant displayed or threatened the use of what appeared to be a deadly weapon or dangerous instrument." Defendant acknowledges that what the state was required to show was that defendant appeared to have a weapon; that it does not matter whether defendant actually had a weapon. *See State v. Davis,* 765 S.W.2d 603, 606 (Mo. banc 1989); *State v. Dickerson,* 607 S.W.2d 196, 197–98 (Mo.App. 1980). He argues, however, that because a witness in the Pizza Hut robbery, Louis Hogan, Jr., realized during the course of the robbery that the gun defendant displayed was a fake, defendant did not display or threaten the use of what appeared to be a dangerous or deadly weapon.

Mr. Hogan saw defendant enter the rear door of the Pizza Hut. He saw defendant was carrying a gun. After defendant ordered the people in the building to get on the floor, several did. Only after defendant turned his back on Mr. Hogan did Mr. Hogan see that the gun's barrel did not have a hole in it and engage defendant in an altercation. Others in the restaurant who defendant threatened and ordered to the floor did as defendant had directed. A reasonable inference would be that the failure of others who were in the restaurant to disregard defendant's orders was based on a belief that what defendant displayed appeared to be a deadly weapon. A reasonable juror could find, on that basis, that defendant appeared to display a deadly weapon. Point I is denied.

Point III is directed to a claim that the trial court erred in denying defendant's motion for continuance. Defendant based his motion for continuance on the contention that the state did not timely disclose exculpatory evidence. Defendant argues that the denial of his motion for continuance prevented him from presenting a defense based on additional evidence; that he was denied the opportunity to locate and depose a third person some witnesses identified as the person who committed the Pizza Hut robbery.

This court's search of the record on appeal discloses no written motion for continuance. On November 21, 2002, the respective attorneys appeared before the trial judge. The trial court asked defendant's attorney if he wanted to be heard on his oral motion for continuance. Defense counsel replied that he did. A discussion followed regarding information the defense attorney had regarding the possibility that two prospective witnesses for the state had previously identified persons other than defendant as the person who committed the Pizza Hut robbery.

Rule 24.09 prescribes the procedure for requesting continuances in criminal cases. The rule, as it existed in 2002, stated:

An application for a continuance shall be made by a written motion accompa-

nied by the affidavit of the applicant or some other credible person setting forth the facts upon which the application is based, unless the adverse party consents that the application for continuance may be made orally.[2]

The record does not reflect that the state consented to defendant making an oral application for continuance. Thus, as in *State v. Garrison*, 928 S.W.2d 359, 363 (Mo.App.1996), defendant's motion lacked merit on procedural grounds. *See also State v. Lopez*, 836 S.W.2d 28, 32 (Mo.App. 1992). That alone would be sufficient grounds to deny defendant's point. *Garrison, supra.*

■ This court, nevertheless, has reviewed the record with respect to the substance of defendant's complaint. A September 12, 2002, docket entry set the case for trial on November 26, 2002. Defendant's attempt to obtain a continuance occurred November 21, 2002, a Thursday. Defendant's trial attorney told the trial judge that he had been allowed to copy the prosecuting attorney's file "to make certain that we had everything." The defense attorney told the court that in the course of accumulating the material on the preceding Friday, he became aware of some information he had not known before. The information defendant's attorney related to the trial court was "that two of the State's witnesses had identified individuals other than the Defendant." He requested a continuance for the purpose of determining the identity of an individual the two witnesses had identified from photo lineups. Defendant's attorney suggested that this information might permit him to "present an alternative theory of the case

that the person that two of the witnesses identified [was] the actual culprit rather than the Defendant."

■ The trial judge asked the assistant prosecutor if the state wished to add anything. The prosecutor stated he did not; that the material that prompted defendant's attorney to address the court regarding a possible continuance "ha[d] been available ever since practically from the beginning." After further discussion with the trial judge, the prosecutor added, "So I mean, it's been in [the public defenders'] hands for two years anyway. And I am confident the material has been provided as it was provided to us." After further discussion with the attorneys, the trial judge denied the oral motion for continuance. "The decision to grant or deny a continuance is within the sound discretion of the trial court. A very strong showing is required to prove abuse of that discretion, with the party requesting the continuance bearing the burden of showing prejudice." *State v. Schaal*, 806 S.W.2d 659, 666 (Mo. banc 1991), *cert. denied*, 502 U.S. 1075, 112 S.Ct. 976, 117 L.Ed.2d 140 (1992).

■ Apart from the state's representation that the information disclosed on November 15, 2002, had been available to defendant "since practically from the beginning," a statement that was not disputed by defense counsel, 11 days remained until trial. Defendant did not demonstrate that he could not have or did not obtain whatever information he may have wished regarding the photo lineup identifications before trial commenced. Defendant has shown no prejudice by reason of the trial court's denial of his request for continuance. "Judicial discretion is abused when

2. A revision of Rule 24.09 was adopted March 17, 2003, effective January 1, 2004. The requirement that a motion for continuance "set forth in writing the facts upon which the motion is based" remains the same in the

revision. It does not require the motion to be accompanied by an affidavit. The current rule states the motion "may be oral" if the adverse party consents or the trial court "finds good cause."

the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *State v. Christeson,* 50 S.W.3d 251, 261 (Mo. banc), *cert. denied,* 534 U.S. 978, 122 S.Ct. 406, 151 L.Ed.2d 309 (2001). The trial court did not abuse its discretion in denying defendant's request for continuance. Point III is denied.

Point IV is directed to testimony of a witness called by the state, Debra Enderle. Ms. Enderle was a property clerk and crime scene technician employed by the Cape Girardeau Police Department. Her testimony at trial included a description of her work background. She explained that she had worked at a regional crime laboratory at Cape Girardeau as a student; that she later worked as a crime scene technician and received training as an employee of the Kansas City, Missouri, Police Department. She is certified by the International Association for Identification. She returned to Cape Girardeau in the fall of 1998 where she began her work with that police department.

Ms. Enderle described the nature of her work as a crime scene investigator. She stated that she responds to crime scenes; that she photographs evidence at the scene to preserve it for use in court. She collects and identifies evidence and prepares it for court. She then explained what she did in investigating the Pizza Hut robbery.

Defendant's Point IV, as this court perceives it, is directed to Ms. Enderle's testimony regarding her observation of bloody footprints. She stated that she went into the kitchen where she observed bloody footprints and a pair of glasses on the floor. She said there were additional bloody footprints going down a hallway that led to the back door of the business.

Ms. Enderle identified photographs she had taken of some of those footprints and told about the process she used "to try to improve the image." She also identified a "gel-lift" that she explained was used to collect two shoe prints. She explained that this was done by "apply[ing] fingerprint powder starting at one end and us[ing] it to roll the gel-lift over the print, and then ... peel it back and apply the clear covering to protect it."

Ms. Enderle was asked if she later photographed the bottom of a sole of a shoe defendant was wearing. She said she had and identified a photograph she had taken of the shoe. She said the purpose of the photograph was to compare it with the footprints at the robbery scene. She was asked to describe the features she had compared. She stated that one thing she noticed was "class characteristics" which would put the shoe defendant was wearing in a particular grouping. She explained that diamond patterns on the sole of the shoe were distinct. She stated there were similarities with what the gel-lift disclosed. She also explained that there was a damaged area; that a "diamond" area on the sole of the shoe had been damaged and was indented into the shoe. She stated those areas on the shoe were similar to the print she recovered at the scene of the robbery. Ms. Enderle was then asked, "As a result of that comparison, what did you do?" She answered, "I notified the officers that it was very likely they [sic] could be the shoe that made the prints." Defendant objected "as per the motion."[3] The objection was overruled.

---

**3.** The record on appeal does not clearly identify "the motion" to which the objection refers. The legal file includes a motion designated "MOTION IN LIMINE" that is shown as being filed November 26, 2002, that requested the trial court to "preclude the state from eliciting any expert testimony regarding evidence analysis regarding shoe print identification during **any part** of the trial." [Em-

Point IV asserts that the trial court erred in permitting Debra Enderle to testify that she told officers the comparison of the shoe sole defendant was wearing to the shoe prints left at the scene could be a match.[4] The state argues that this point is not well-taken; that Ms. Enderle's testimony was that she observed similarities between the tread on the sole of defendant's shoe and the prints she observed and recorded at the scene of the robbery; that her testimony was not that of an expert.

A police officer may testify as to his or her observation of a fact.[5] An observation of a fact is not inadmissible because it is founded on the witness' experience as a police officer. *State v. Simpson,* 793 S.W.2d 182, 186 (Mo.App. 1990). This court, in *State v. Gardner,* 700 S.W.2d 172 (Mo.App.1985), found no error in a trial court permitting a police officer to testify concerning his observation of the pattern in a shoe print found outside a window at a burglary scene and shoes taken from a defendant following his arrest. *Gardner* declared that a non-expert could express an opinion that a "wavy pattern" in a footprint was similar to markings on the sole of a defendant's shoe; that "such observation was a fact issue open to the sense of sight." *Id.* at 173.

This court discerns no distinction between what occurred in *Gardner* and what occurred in this case. The trial court did not err in overruling defendant's objection to the question that elicited Ms. Enderle's response that she informed officers the shoe worn by defendant could have produced the prints she observed at the Pizza Hut. Point IV is denied. The judgment is affirmed.

BATES, C.J., and BARNEY, J., concur.

---

phasis in original]. The motion asserts Ms. Enderle was not qualified to testify in evidence analysis. This court infers that to be the motion to which defense counsel referred at trial. The trial court did not expressly rule on the motion but stated to defense counsel, "We will let you voir dire her on the record. If she's a qualified evidence technician that has matched those things up in the past, then that experience may go to her qualifications, so I will let you voir dire her."

4. Point IV also refers to having permitted Ms. Enderle to present a lay opinion "through hearsay." Nothing in the argument portion of the brief addresses that allegation of error. It is, therefore, deemed abandoned. *See State v. Hamilton,* 996 S.W.2d 758, 761–62 (Mo. App.1999).

5. In *State v. Proby,* 861 S.W.2d 814, 818 (Mo. App.1993), a police officer provided testimony that compared photographs of footprints at a crime scene with shoes worn by a person accused of the crime.