

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI, )     *Opinion issued October 13, 2020*
                     )
           Respondent, )
                     )
v.                   )     No. SC98295
                     )
RASHIDI DON LOPER,   )
                     )
           Appellant. )

**APPEAL FROM THE CIRCUIT COURT OF ST. LOUIS CITY**
The Honorable Thomas C. Clark II, Judge

Rashidi Don Loper (hereinafter, "Loper") was convicted after a jury trial of first-degree attempted rape, second-degree domestic assault, first-degree domestic assault, two counts of armed criminal action, and victim tampering against E.S.L., with whom he had a romantic relationship. Loper raises five points of evidentiary error on appeal.[1] This Court holds the circuit court committed no error regarding Loper's claims and affirms the circuit court's judgment.

## Factual and Procedural Background

Loper does not challenge the sufficiency of the evidence to support his convictions. Loper and E.S.L. were involved in an on-and-off romantic relationship beginning in 2009.

---

[1] This Court has jurisdiction. Mo. Const. art. V, sec. 10.

On April 3, 2015, Loper went to see E.S.L. even though they had no contact during the prior six months. E.S.L. admitted Loper into her apartment. E.S.L. went to her bedroom, laid down on her bed, and pulled the covers over her head. Loper pulled the covers off of E.S.L. and pulled her legs toward him. E.S.L. told Loper she did not want to have sex with him. Loper pulled down his pants, exposed himself, and started pulling down E.S.L.'s pants. E.S.L. attempted to fight off Loper by kicking him and pulling at her pants. Loper grabbed E.S.L. by the throat and choked her until she lost consciousness.

E.S.L. woke up naked and submerged in water in her bathtub with the shower running. E.S.L. had a severe cut on her wrist "to the point it was barely attached to [her] arm." E.S.L. found a kitchen knife lying between her legs. E.S.L. pulled herself out of the bathtub, wrapped her wrist to try to stop the bleeding, and called 911. E.S.L. initially told Officer Wesley Pierce (hereinafter, "Officer Pierce") and a paramedic she cut her wrist, although she could not remember doing it. After receiving medical treatment, E.S.L. remembered Loper had been present and she realized she had not cut her wrist.

E.S.L. had significant swelling to her face and tiny bruises and hemorrhaging in the whites of her eyes, which suggested she had been strangled. E.S.L. had ligature marks around her neck consisting of a pattern of vertical lines that could have been caused by a landline telephone cord. Investigators found trails of blood throughout the apartment, including one leading out of the bathroom and into the living room where the telephone cord, which had blood on it, was located. There was blood on E.S.L.'s mattress.

Loper was arrested and charged with several counts: (I) first-degree attempted rape; (II) first-degree domestic assault for strangling E.S.L. with a telephone cord; (III) armed

2

criminal action correlating to count II; (IV) first-degree domestic assault for cutting E.S.L.'s wrist; (V) armed criminal action correlating to count IV; (VI) felony kidnapping;[2] and (VII) victim tampering for actions Loper took after he was arrested to dissuade E.S.L. from assisting in his prosecution. E.S.L. later helped secure Loper's pretrial release. Loper and E.S.L. resumed their relationship and got married, but they were separated at the time of trial.

E.S.L. testified at trial how Loper came to her apartment and how she fought him off as he attempted to rape her. E.S.L. described Loper choking her, losing consciousness, and waking up in the bathtub with injuries. Defense counsel cross-examined E.S.L. about two prior instances in which she allegedly attempted suicide after breaking up with Loper, which E.S.L. denied.

Officer Pierce testified an unidentified hospital doctor told him E.S.L.'s wrist injury was not self-inflicted, which prompted him to refer the case to Detective Kara Lindhorst (hereinafter, "Detective Lindhorst"), a detective with the domestic assault response team (hereinafter, "DART"). Detective Lindhorst testified about her investigation and how the characteristics of power and control were manifested in this case. Dr. Erin Quattromani (hereinafter, "Dr. Quattromani") treated E.S.L. at the hospital and opined E.S.L.'s wrist injury was not self-inflicted given the depth and length of the injury and E.S.L.'s reporting she did not inflict the cut herself. Other medical personnel testified about E.S.L.'s injuries resulting from being strangled and choked. Michelle Schiller-Baker (hereinafter, "Schiller-

_____

[2] This charge was dismissed prior to trial.

3

Baker") testified as an expert in the general behaviors and characteristics of domestic assault victims. Schiller-Baker explained how power and control worked in domestic violence cases involving strangulation and sexual assault. Schiller-Baker did not testify regarding the specifics of the parties' relationship or the facts of the case.

Loper testified about his tumultuous relationship with E.S.L. and how they both engaged in domestic violence. Loper admitted he went to E.S.L.'s apartment on the day of the offenses. Loper testified they began having sex, but he stopped during the act because he realized he should not cheat on his current girlfriend. Loper claimed E.S.L. became irate and began fighting him as he tried to leave. Loper stated he "pushed her by her throat … like pushed her back to get her off of [him]." Loper stated at that point he left the apartment. Loper denied using force during sex, cutting E.S.L.'s wrist, or choking her until she lost consciousness.

The jury found Loper guilty as charged on all counts, except for count II, in which it found Loper guilty of second-degree domestic assault for choking E.S.L. with his hands instead of strangling her with a telephone cord. Loper was sentenced to a term of fifteen years' imprisonment for first-degree domestic assault and three years' imprisonment for the associated armed criminal action offense, seven years' imprisonment for first-degree attempted rape, five years' imprisonment for second-degree assault and three years' imprisonment for the associated armed criminal action offense, and three years' imprisonment for victim tampering. Loper's sentences were ordered to run concurrently, except for the first-degree attempted rape, which was ordered to run consecutively, for a total of twenty-two years' imprisonment. Loper appeals.

4

## Standard of Review

Loper raises five points challenging the circuit court's rulings admitting or excluding certain evidence. The circuit court "has broad discretion to admit or exclude evidence during a criminal trial, and error occurs only when there is a clear abuse of this discretion." *State v. Hartman*, 488 S.W.3d 53, 57 (Mo. banc 2016) (internal quotation omitted). An abuse of discretion occurs only if the circuit court's ruling admitting or excluding evidence "is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *State v. Blurton*, 484 S.W.3d 758, 769 (Mo. banc 2016) (internal quotation omitted). "This Court will reverse the [circuit] court's decision only if there is a reasonable probability that the error affected the outcome of the trial or deprived the defendant of a fair trial." *State v. Wood*, 580 S.W.3d 566, 574 (Mo. banc 2019).

When defendants have not preserved their claims of evidentiary error, this Court may exercise its discretion to review the claim for plain error. Rule 30.20. "[T]his Court will not review a claim for plain error unless the claimed error 'facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted.'" *State v. Clay*, 533 S.W.3d 710, 714 (Mo. banc 2017) (quoting Rule 30.20)).

## Detective Lindhorst's Testimony

Loper argues the circuit court abused its discretion in overruling his objection and allowing the state to present testimony from Detective Lindhorst that the case was about Loper exercising "power and control" over E.S.L. Loper argues admitting this testimony

5

deprived him of a fair trial because these comments amounted to expert testimony that invaded the province of the jury by vouching for E.S.L.'s credibility. The state maintains Loper failed to preserve this claim and is entitled only to plain error review.

Detective Lindhorst testified she has been a police officer for sixteen years and worked with DART for nine years. Detective Lindhorst stated she received specialized domestic violence training at local, state, and national levels. She also teaches and speaks to advocacy groups about domestic violence. Detective Lindhorst indicated she has handled thousands of domestic violence cases over nine years. Detective Lindhorst testified extensively and without objection about how she became familiar with the concept of power and control through her training and experience handling domestic violence cases. Detective Lindhorst explained,

> In general, domestic violence, unlike a lot of crime, it's all about power and control and authority over one person. We have -- a lot of our offenders this is what they do. They want to make sure that the victim is controlled all the time, no matter how long they've been in the relationship, no matter how long the relationship has been over. We try to get that from our victim to help us understand what happened in that relationship, because it's important for them to recognize and for us to be able to talk to them about what happened in the relationship, why is that power and control which includes harassment, stalking, threatening behavior, threats to the victim, threats to the victim's family. We try to get all that information, talk to the victims about it. We also train on that information.

The prosecutor then asked Detective Lindhorst if she "[had] evidence of power and control in this case," to which she answered, "Absolutely." The prosecutor asked Detective Lindhorst to describe "the signs she saw through [her] investigation." Detective Lindhorst stated, "The fact that they hadn't seen each other over months at a time to me is very --," at which point defense counsel objected, stating "personal opinion," and the parties

6

approached the bench. The circuit court stated it believed the state laid a foundation establishing Detective Lindhorst had sufficient training and experience to discuss this issue and asked defense counsel if he wanted to add to his objection. Defense counsel stated, "No. That's fine. Just note the objection." Detective Lindhorst then testified,

> In addition, like I already said, the time that had passed between when the relationship had ended and the assault that occurred is not uncommon. A lot of cases aren't exactly the same. It's telling since they hadn't been together in that long, the offender had thought maybe his power and authority over her had started to slip, which indicates he needs to come back and dominate. Additionally, the strangulation is a very intimate crime. Strangulation and also the cut on her wrist is very -- the strangulation is very intimate. You have to be close to that person. When you strangle them, they go unconscious. That takes a lot of fight. You will be able to feel them stop breathing. You will be able to feel them kick or struggle with you, and to have a broken fingernail --

"For an allegation of error to be considered preserved and to receive more than plain error review, it must be objected to during the trial *and* presented to the trial court in a motion for new trial." *State v. Walter*, 479 S.W.3d 118, 123 (Mo. banc 2016). Loper's objection to Detective Lindhorst's testimony at trial was "personal opinion." Defense counsel declined to expand his objection when given the opportunity. Loper's new trial motion alleged Detective Lindhorst's opinion testimony was irrelevant and outside of her training and experience. This is inconsistent with Loper's trial objection. Further, Loper did not object or argue during trial or in his new trial motion that Detective Lindhorst's testimony vouched for E.S.L.'s credibility. Nevertheless, Loper argues his "personal opinion" objection preserves not only his argument that a lay witness' opinion testimony goes beyond the witness's personal observation but also that the improper opinion on

7

disputed facts invades the province of the jury. But this is inconsistent with the circuit court's understanding of Loper's objection during trial and this Court's precedent.

"Including a claim of error in a motion for new trial is a requirement of preserving an issue for review, but a claim of error is not wholly preserved absent a timely objection at trial." *Id*. "Typically, an objection made after a question has been asked and answered is untimely." *State v. Rice*, 573 S.W.3d 53, 73 (Mo. banc 2019). Exceptions to this rule exist "if the witness answers so quickly that it is impossible to object or if the grounds for objection become apparent only when the answer is given." *Blurton*, 484 S.W.3d at 774.

Loper's objection was untimely. Detective Lindhorst stated "absolutely" when the state asked her if there was evidence of power and control demonstrated in this case. The state then asked Detective Lindhorst to explain what evidence she saw, and Detective Lindhorst began to answer before defense counsel raised any objection.

Furthermore, following Loper's counsel's objection to Detective Lindhorst's opinion, the circuit court explained it believed the state laid a proper foundation allowing Detective Lindhorst to testify as an expert and give her opinion and invited counsel to expand the objection to the testimony. At that point, Loper's counsel could have clarified, if this was his intention, that he was not objecting to Detective Lindhorst providing an expert opinion, but the specific testimony about what Detective Lindhorst observed in this particular case was improper because it vouched for the credibility of the victim and invaded the province of the jury. Generally objecting that the testimony was "personal opinion" did not advise the circuit court sufficiently as to the nature of Loper's objection and the basis for his argument on appeal. As this Court has noted, a specific objection is

8

required to preserve the issue on appeal to allow the circuit court to correct any potential error at the earliest possible point in the proceeding. *See State v. Amick*, 462 S.W.3d 413, 415 (Mo. banc 2015) (holding that objections must be sufficiently specific to be preserved for appellate review).

Hence, because Loper's objection in this case was untimely and not specific as to vouching for the witness or invading the province of the jury, this claim is entitled only to plain error review. "Plain error review is discretionary" *State v. Michaud*, 600 S.W.3d 757, 762 (Mo. banc 2019), and "must be evident, obvious, and clear." *Walter*, 479 S.W.3d at 131. Loper bears the burden of demonstrating a manifest injustice occurred. *State v. Oates*, 540 S.W.3d 858, 863 (Mo. banc 2018).

"A lay witness is permitted to give opinion testimony about a matter in dispute when the lay witness's opinion is based on knowledge not available to the jury and would be helpful to the jury in reaching the jury's own opinion." *State v. Starkey*, 380 S.W.3d 636, 647 (Mo. App. E.D. 2012). Further, "[i]t is permissible for an officer to testify concerning their observation of a fact based on the witness' experience as a police officer." *State v. Galvin*, 483 S.W.3d 462, 467 (Mo. App. E.D. 2016). Moreover, in *State v. Jaco*, 156 S.W.3d 775, 779-80 (Mo. banc 2005), this Court explained:

> Expert testimony relating to profile evidence is admissible in the discretion of the trial court to describe behaviors and characteristics commonly observed in victims or to determine the cause of an injury to a victim. However, profile evidence is not admissible to show a defendant's responsibility for injury to a victim. This victim/defendant distinction is necessary to accommodate the general rule that while an expert may express an opinion regarding an ultimate issue in a case, the expert may not express an opinion on the guilt or innocence of the defendant. To do so, of course, would be to invade the province of the jury.

9

(Internal citations omitted).

In this case, Loper cannot demonstrate the circuit court's admission of Detective Lindhorst's testimony facially establishes substantial grounds for believing manifest injustice or a miscarriage of justice resulted when she testified she "absolutely" saw evidence of power and control dynamics typically present in domestic violence cases. In *Silvey v. State*, 894 S.W.2d 662, 671 (Mo. banc 1995),[3] this Court found testimony regarding whether a child exhibited behavioral indicators consistent with sexual abuse was admissible because the opinion did not state whether the child suffered abuse inflicted by the defendant. Further, the testimony did not comment upon the child's credibility or the credibility of abuse victims in general. This was in contrast to *State v. Williams*, 858 S.W.2d 796, 801 (Mo. App. E.D. 1993), in which an expert stated children who are abused sexually rarely lie about the abuse and incidents of lying among children was very low. *See also State v. Haslett*, 283 S.W.3d 769, 779-80 (Mo. App. S.D. 2009) (holding the medical examiner's testimony that a child's injuries were "atypical," "uncommon," were "indicative of abuse," and "routinely see[n] in cases involving child abuse," was admissible and did not invade the province of the jury because the medical examiner never testified or inferred the defendant caused the child's injuries or opined as to the defendant's guilt); *State v. Gray*, 347 S.W.3d 490, 504 (Mo. App. E.D. 2011) (holding the expert's testimony that a child did not receive her injuries through normal childhood accidents and falls, but, instead, the injuries were "absolutely …" "consistent with abusive behavior or suspicion

---

[3] *Silvey* was abrogated on other grounds by *State v. Porter*, 439 S.W.3d 208, 212 (Mo. banc 2014).

10

of abusive type of injuries" was admissible because it did not invade the province of the jury, the testimony did not state or infer the defendant caused the injuries, and the expert did not comment about the defendant's guilt); *State v. Beck*, 557 S.W.3d 408, 422-23 (Mo. App. W.D. 2018) (determining a physician's diagnosis that a child was abused sexually, based on the child's reported history and physical exam, did not implicate the defendant as the abuser or comment about the child's veracity).

Loper argues, because there was a dispute as to how E.S.L.'s wrist was injured, Detective Lindhorst's testimony invaded the jury's province to determine E.S.L.'s credibility when stating she "absolutely" saw characteristics consistent with domestic violence. However, this same type of dispute arose in *Gray*, in which the defendant alleged the child received her injuries through normal childhood accidents and falls, but the expert opined the injuries were "absolutely" consistent with abuse. This testimony was found not to invade the province of the jury. *Gray*, 347 S.W.3d at 504. Similarly, Detective Lindhorst did not comment about E.S.L.'s credibility or implicate Loper as the perpetrator of the domestic violence that she believed occurred in this case. Finally, Loper cannot demonstrate prejudice in that the state relied on medical provider testimony and evidence depicting E.S.L.'s wrist injury—not Detective Lindhorst's testimony about the wrist injury—as proof it was not self-inflicted as the defense contended. The circuit court did not plainly err in overruling Loper's untimely, nonmeritorious objection to Detective Lindhorst's testimony. This point is denied.

**Schiller-Baker's Testimony**

Loper argues the circuit court abused its discretion in overruling his objection to qualifying Schiller-Baker as an expert and in admitting her testimony regarding domestic violence victims. Loper argues the state failed to lay a proper foundation to qualify Schiller-Baker as an expert and her testimony improperly vouched for E.S.L.'s credibility.

*Foundation for Expert Qualification*

Loper argues the state failed to lay a proper foundation to qualify Schiller-Baker as an expert because she has no formal education in medicine, psychology, or counseling, she did not elaborate on the details of her training, and she did not rely on the facts of the case to form her opinion, rendering it unreliable and irrelevant. This claim is preserved and will be reviewed for an abuse of discretion. *Hartman*, 488 S.W.3d at 57.

Section 490.065.2(1)(a), RSMo Supp. 2017, sets forth the requirements to admit expert opinion testimony. This section provides,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if … [t]he expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[.]

Prior to trial, the state endorsed Schiller-Baker as a witness and sought to have her testimony admitted as an expert on the subject of domestic violence, to which Loper objected. The circuit court held a pretrial hearing pursuant to section 490.065. Schiller-Baker testified she was the executive director of a domestic violence shelter. Schiller-Baker stated she worked at the shelter for thirty-five years, personally worked with over 4,000 women involved in abusive relationships, and attended and presented hundreds of

workshops and conferences directly related to her work at the shelter. Schiller-Baker explained she engaged in continuing education, training, and attended monthly meetings regarding policies, protocols, crisis intervention, and victim safety. Schiller-Baker testified she gave talks and led workshops about domestic violence for legal, medical, and religious organizations and facilitated training with local law enforcement. Schiller-Baker stated she had been qualified as an expert to testify about this same topic in six prior cases. Schiller-Baker admitted she had no formal training in psychology or psychiatry but stated she based her opinions on her experience, ongoing training, workshops, and research.

The circuit court ruled Schiller-Baker's testimony would assist the trier of fact because domestic violence is an area beyond the understanding of the ordinary person and general profile evidence, such as explaining different behaviors involving domestic violence, can be a proper topic for the jury. The circuit court further found Schiller-Baker had unique and extensive knowledge of domestic violence based on her position, her extensive experience throughout the state, her training, along with the extensive training she provided for several different entities qualifying her to testify as an expert.

Loper cites no case supporting his position that Schiller-Baker must possess formal education or licensure to testify as an expert. The statute's plain language contemplates an expert may be qualified based solely upon his or her training or experience. *State ex rel. Gardner v. Wright*, 562 S.W.3d 311, 321 (Mo. App. E.D. 2018). "[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience." *Id*. (alteration in original) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156, 119 S. Ct. 1167, 1178, 143 L.Ed.2d 238 (1999)). Loper

13

also complains about the lack of detail Schiller-Baker offered about the training she received and provided over the course of thirty-five years. Loper had the opportunity to probe this issue on cross-examination but failed to do so. The circuit court did not abuse its discretion in finding Schiller-Baker's breadth and depth of experience qualified her to testify as an expert about this issue.

Loper briefly argues, because Schiller-Baker's opinion was not based on or consistent with the facts of the case, it was unreliable and irrelevant. "[A]dmission of expert evidence requires the [circuit] court to apply the same standards for relevance and admissibility that apply to other types of evidence." *Shallow v. Follwell*, 554 S.W.3d 878, 883 (Mo. banc 2018) (first alteration in original) (quoting *Lozano v. BNSF Railway Co.*, 421 S.W.3d 448, 451 n.2 (Mo. banc 2014)). "Reliability is determined by considering whether the testimony is based on sufficient facts or data, reliable principles and methods and reliable application thereof." *Gardner*, 562 S.W.3d at 319. Moreover, whether testimony is relevant under section 490.065 "depends on whether the testimony contains specialized knowledge that will assist the trier of fact to understand the evidence." *Id*. Schiller-Baker's generalized testimony was based on her vast experience as the executive director of a domestic violence shelter and her extensive training. Schiller-Baker's reliance on this experience and training, rather than the facts of this case, to provide generalized testimony does not render it unreliable or irrelevant. The circuit court did not abuse its discretion in qualifying Schiller-Baker as an expert and finding her opinion relevant and reliable.

*Vouching for E.S.L.'s Credibility*

In the same point, Loper argues admitting this testimony deprived him of a fair trial in that Schiller-Baker's testimony invaded the province of the jury by vouching for E.S.L.'s credibility. This portion of Loper's claim is unpreserved in that this objection was not raised at trial or in his new trial motion. Hence, this Court may review this claim only for plain error. Rule 30.20.

"When determining the admissibility of opinion testimony, expert witnesses should not be allowed to give their opinion as to the veracity of another witness's statement, because in so doing, they invade the province of the jury." *State v. Churchill*, 98 S.W.3d 536, 538-39 (Mo. banc 2003). "General testimony describes a 'generalization' of behaviors and other characteristics commonly found in those who have been the victims of … abuse. Particularized testimony is that testimony concerning a specific victim's credibility as to whether they have been abused." *Id*. at 539. The circuit court retains "broad discretion in admitting general testimony …." *Id*.

At trial, Schiller-Baker gave proper generalized testimony about the common behaviors of domestic violence victims. Schiller-Baker testified about how power and control played into the cycle of violence with domestic abusers, how abusers use power and control as tools, and how power and control play into strangulation and sexual assault. Schiller-Baker also testified about how fear affects victims. This generalized testimony does not transform into improper particularized testimony about a particular victim if some of the generalized testimony is applicable to the facts of the case. Notably, Schiller-Baker testified she did not know either of the parties, did not speak to them, did not examine the

15

evidence in this case, and did not learn any of the details of the case, which belies Loper's argument this was particularized testimony vouching for E.S.L.'s credibility. Finally, Loper contends the circuit court did not allow him to present contrary evidence to Schiller-Baker's testimony regarding a victim's fear or the cycle of violence, specifically as will be discussed in his fifth point regarding the circuit court's exclusion of the tire iron incident. The exclusion of this inadmissible evidence does not render Schiller-Baker's testimony inadmissible or improper. Loper cannot meet his burden of demonstrating a manifest injustice occurred by admitting Schiller-Baker's generalized testimony. This point is denied.

### Officer Pierce's Testimony

Loper contends the circuit court abused its discretion in overruling his objection to admitting Officer Pierce's testimony that an unidentified hospital doctor told him E.S.L.'s wrist injury was not self-inflicted. Loper argues this testimony violated his right to due process and to confront witnesses because the unidentified hospital doctor's out-of-court statement constituted inadmissible hearsay in that it was offered for the truth of the matter asserted. Loper also argues the statement went beyond what was necessary to explain Officer Pierce's subsequent conduct. Loper argues this error was compounded when the circuit court relied upon this statement to admit Dr. Quattromani's opinion testimony. Loper has preserved this claim, which will be reviewed for an abuse of discretion. *Hartman*, 488 S.W.3d at 57. "Whether testimony violates the confrontation clause is a question of law this Court reviews de novo." *State v. Hosier*, 454 S.W.3d 883, 896 (Mo. banc 2015).

16

Prior to trial, the state filed a motion informing Loper it intended to introduce E.S.L.'s statements about her wrist injury to first responders as excited utterances, to which Loper objected. The circuit court overruled Loper's objection but reserved a final ruling based on how the evidence was developed during trial. During trial, Loper objected when Officer Pierce was asked what, if anything, E.S.L. said about her injuries. The circuit court overruled the objection. Officer Pierce testified, when he responded to E.S.L.'s apartment, E.S.L. told him she did not know if she tried to kill herself, she did not have a reason to do so, but she did not know why she had a cut on her wrist. Officer Pierce went to the hospital to inquire about E.S.L.'s condition and spoke to "the doctor" to determine which way to take the investigation. Loper objected when Officer Pierce was asked to reveal what "the doctor" told him about E.S.L.'s wrist injury. At the bench conference, defense counsel acknowledged the police report stated "the doctor" told Officer Pierce that E.S.L.'s wrist injury was not self-inflicted.[4] Defense counsel also admitted he received the medical reports from the state; however, the opinion E.S.L.'s wrist injury was not self-inflicted was not contained in the disclosed medical records. Although Dr. Quattromani was endorsed as a witness, defense counsel argued Officer Pierce failed to identify "the doctor" to whom he spoke, raising the possibility Officer Pierce spoke to someone other than Dr. Quatrromani at the hospital. Defense counsel stated "the doctor's" opinion was hearsay, violated his right to confrontation, and went to a key fact in the case. The state

---

[4] The police report was not admitted at trial and is not included in the record on appeal for this Court to verify its contents. Because the parties and the circuit court all agree on the police report's contents, however, such that this Court will assume its accuracy without deciding the matter.

17

countered that Officer Pierce's statement explained subsequent police conduct because he initially believed E.S.L. may have attempted suicide, but after speaking with "the doctor" who indicated the wrist injury was not self-inflicted, he contacted DART for further investigation. The circuit court overruled the objection, finding the statement was admissible to demonstrate subsequent police conduct.

"Hearsay statements, or out-of-court statements used to prove the truth of the matter asserted, generally are inadmissible." *Hartman*, 488 S.W.3d at 57. However, "otherwise inadmissible evidence can become admissible if its purpose is to explain subsequent police conduct." *State v. Shockley*, 410 S.W.3d 179, 194 (Mo. banc 2013). Statements explaining relevant background information and continuity constitute subsequent police conduct. *State v. Dunn*, 817 S.W.2d 241, 243 (Mo. banc 1991).

Officer Pierce's testimony constituted subsequent police conduct. Officer Pierce explained after he left the scene in which he was unsure whether E.S.L. attempted suicide, he went to the hospital to inquire about her condition to determine how the investigation should proceed. Officer Pierce spoke to "the doctor," who stated E.S.L.'s wrist injury was not self-inflicted, and contacted DART to continue the investigation and search for a suspect. This testimony provided relevant background information, provided continuity, and did not leave the jury to speculate why the case proceeded from a possible suicide attempt to a criminal investigation.

Loper argues, however, Officer Pierce's testimony went beyond what was necessary to explain his subsequent conduct. "[W]hen such out-of-court statements go beyond what is necessary to explain subsequent police conduct, they are hearsay, unless they qualify as

18

non-hearsay on another basis." *State v. Douglas*, 131 S.W.3d 818, 824 (Mo. App. W.D. 2004) (internal citations omitted). "If an officer is permitted to narrate the details of an investigation in a way that unnecessarily puts incriminating information about the defendant before the jury, the testimony violates the defendant's right to confrontation." *State v. Cole*, 483 S.W.3d 470, 474 (Mo. App. E.D. 2016).

Loper claims Officer Pierce merely needed to testify that, based on the totality of the circumstances, he referred the case to DART. Loper relies on cases holding officer testimony went beyond what was necessary to explain subsequent police conduct and constituted error. *See State v. Shigemura*, 680 S.W.2d 256, 257-58 (Mo. App. E.D. 1984) (reversing a conviction based on inadmissible hearsay when an officer testified a confidential informant advised him the defendant was in possession of stolen property and intended to sell it at a specific location and this hearsay statement constituted the only evidence the defendant knew the items were stolen); *State v. Garrett*, 139 S.W.3d 577, 582-84 (Mo. App. S.D. 2004) (reversing a conviction based on inadmissible hearsay when an officer testified a confidential informant advised him the defendant regularly was engaged in drug-related activity at a specific address when the evidence conflicted regarding whether the defendant resided at the location and had constructive possession of the drugs found therein); *Cole*, 483 S.W.3d at 475-76 (holding harmless error occurred in admitting an officer's testimony that a confidential informant advised him the defendant received weekly shipments of drugs because it exceeded the scope necessary to provide background and continuity for officer's investigation, constituted inadmissible hearsay, and violated the defendant's rights under Confrontation Clause); *Douglas*, 131 S.W.3d at

19

826 (reversing a conviction based on inadmissible hearsay when an officer testified the dispatcher informed him about a parked car with a subject "slumped over the wheel" because the only evidence offered to prove the defendant was operating the vehicle to support the driving while intoxicated charge was the challenged hearsay statement from the dispatcher).

None of these cases aids Loper's argument. Officer Pierce stated he spoke to "the doctor" at the hospital and "she" indicated the wrist injury was not self-inflicted. While the parties disputed whether E.S.L.'s wrist injury was self-inflicted, Officer Pierce's testimony was not the only evidence presented to resolve this issue, thereby distinguishing this case from those on which Loper relies. Dr. Quattromani was the emergency room physician who treated E.S.L.'s wrist injury. Dr. Quattromani was endorsed and called as a witness who was subject to extensive cross-examination, unlike the confidential informants and dispatcher in the cases Loper cites. While Loper argues there is no evidence Dr. Quattromani was "the doctor" to whom Officer Pierce spoke, when viewing the evidence in the light most favorable to the verdict, this Court finds the circuit court did not abuse its discretion in finding she was the declarant because the police report contained the allegedly unattributed out-of-court statement, it identified Dr. Quattromani as the treating physician, and Officer Pierce referred to "the doctor" as "she" during his testimony.

Loper points out the state relied on Officer Pierce's hearsay statement in closing by stating "the doctor said the injury was not self-inflicted." This mischaracterizes the state's closing argument. The record reflects the prosecutor stated, "Dr. Quattromani, an experienced emergency room doctor, in her years of experience as an emergency room

20

doctor, she has never seen a self-inflicted injury like this. The depth is just too deep, ladies and gentlemen." The circuit court did not abuse its discretion in admitting Officer Pierce's testimony or in relying upon it to admit Dr. Quattromani's testimony. This point is denied.

## Dr. Quattromani's Testimony

Loper asserts the circuit court abused its discretion in overruling his objection and admitting Dr. Quattromani's "surprise" medical testimony that E.S.L.'s wrist injury was not self-inflicted. Loper argues admitting this testimony violated Rule 25.03 and his right to a fair trial and a complete defense. Loper preserved this claim, which will be reviewed for an abuse of discretion. *Hartman*, 488 S.W.3d at 57.

The state endorsed Dr. Quattromani as a witness and disclosed the police report and all of E.S.L.'s medical records, which included records from Dr. Quattromani's treatment. Shortly before the state called Dr. Quattromani to testify, Loper moved to prevent the state from eliciting an opinion regarding whether E.S.L.'s wrist injury was self-inflicted. The circuit court noted the state disclosed over 250 pages of medical records, and

> a police report documenting that [Officer Pierce] consulted Dr. Quattromani regarding the wrist injury, specifically whether or not it was self-inflicted. Based on that response, which Dr. Quattromani indicated that there's no way it could be self-inflicted, triggered the police investigation. The [circuit court] also recites that fact, because that contributed to the [circuit court's] logic in overruling [defense counsel's] objection to [Officer Pierce's] hearsay statements, because it went to subsequent conduct.

Defense counsel conceded the police report indicated Dr. Quattromani was the treating physician, but the paragraph reciting E.S.L.'s wrist injury was not self-inflicted did not attribute the statement to Dr. Quattromani. Defense counsel argued this was the only notice he received there was going to be medical expert opinion testimony stating E.S.L.'s wrist

21

injury was not self-inflicted. Defense counsel also stated he reviewed the medical records and they contained no reference to whether E.S.L.'s wrist injury was self-inflicted. The state countered Loper received the police report stating E.S.L.'s wrist injury was not self-inflicted. The state further argued Dr. Quattromani would be testifying based upon her experience and opinion as an emergency room doctor. The circuit court overruled Loper's motion.

Dr. Quattromani testified that, when E.S.L. was admitted to the emergency room, she was hypotensive due to blood loss, emotional, crying, and kept repeating "I didn't do this." Dr. Quattromani described the large laceration on E.S.L.'s wrist, in which tendon and nerve damage were visible and required surgery to repair. Dr. Quattromani testified she did not believe E.S.L.'s wrist injury was self-inflicted because it was "fairly extensive" and "[i]n my experience, this is a very deep and large wound that does not seem that it would be self-inflicted, the depth of it and the length of it." Dr. Quattromani explained when wrist injuries are self-inflicted, the cuts are much more superficial and do not cut through multiple tendons to the depth and length of E.S.L.'s injury. Dr. Quattromani further testified if she believed E.S.L.'s wrist injury was self-inflicted, she would have asked for a psychiatric consultation, which did not occur. Dr. Quattromani admitted she based her opinion on what E.S.L. reported and the nature of the injury.

"The rules of criminal discovery exist 'to eliminate surprise by allowing both sides to know the witnesses and evidence to be introduced at trial.'" *State v. Zuroweste*, 570 S.W.3d 51, 56 (Mo. banc 2019) (quoting *State v. Walkup*, 220 S.W.3d 748, 753 (Mo. banc 2007) (alterations and quotation omitted)). Rule 25.03 governs which

22

documents and materials the state must disclose to the defendant prior to trial. Loper specifically argues the state violated Rule 25.03(A)(5) (2016), which required the state to disclose "[a]ny reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments, or comparisons." "The Rules of criminal discovery are not mere etiquette nor is compliance discretionary." *State v. Whitfield*, 837 S.W.2d 503, 507 (Mo. banc 1992) (internal quotation omitted). The circuit court retains discretion to impose discovery violation sanctions for failure to comply with Rule 25.03. *State v. Taylor*, 298 S.W.3d 482, 502 (Mo. banc 2009). "A [circuit] court's denial of a requested sanction is an abuse of discretion only where the admission of the evidence results in fundamental unfairness to the defendant." *Id.* (quoting *State v. Edwards*, 116 S.W.3d 511, 534 (Mo. banc 2003)). "Fundamental unfairness occurs when the state's failure to disclose results in defendant's 'genuine surprise' and the surprise prevents meaningful efforts to consider and prepare a strategy for addressing the evidence." *State v. Thompson*, 985 S.W.2d 779, 785 (Mo. banc 1999) (quoting *State v. Johnston*, 957 S.W.2d 734, 750 (Mo. banc 1997)).

Loper argues Dr. Quattromani's testimony should have been barred because: (1) the medical records the state disclosed did not contain Dr. Quattromani's opinion E.S.L.'s wrist injury was not self-inflicted; (2) Dr. Quattromani was endorsed as a treating physician, but the state failed to disclose any report or statement of a medical opinion on the nature of the wrist injury prior to trial; and (3) the state first disclosed Dr. Quattromani's testimony on the third day of trial, which prevented Loper from engaging in meaningful

efforts to consider and prepare a strategy to address this evidence or endorse an expert to counter the testimony.

There is no evidence in the record Dr. Quattromani or any other healthcare provider created a formal report or that the state possessed or withheld any such undisclosed report or statement from any doctor regarding E.S.L.'s wrist injury. Moreover, the record demonstrates the state disclosed the police report—which included a statement that a doctor indicated E.S.L.'s wrist injury was not self-inflicted and identified Dr. Quattromani as E.S.L.'s treating physician—along with medical reports from Dr. Quattromani concerning the extent of E.S.L.'s wrist injury. Hence, Loper received notice and disclosure of a medical opinion regarding whether E.S.L.'s wrist injury was self-inflicted and the circuit court did not abuse its discretion in finding Dr. Quattromani was the doctor who rendered the opinion given she was identified as E.S.L.'s treating physician in the same report that contained the medical opinion.

Loper argues this "surprise" testimony hindered him from engaging in meaningful efforts to consider and prepare a strategy to address this evidence or endorse an expert to counter the testimony. This claim is refuted by the record. Defense counsel proclaimed repeatedly whether E.S.L.'s wrist injury was self-inflicted was a "key issue" in the case, which belies the argument he was surprised the state would offer testimony on this issue. The police report stated the doctor indicated E.S.L.'s wrist injury was not self-inflicted and Dr. Quattromani was named as E.S.L.'s treating physician. Moreover, defense counsel never argued to the circuit court or in his new trial motion he was prevented from endorsing his own medical expert to counter Dr. Quattromani's testimony. Finally, Dr. Quattromani

24

was subject to rigorous cross-examination in which defense counsel elicited concessions that it was possible E.S.L.'s wrist injury was self-inflicted and Dr. Quattromani's opinion was based in part on what E.S.L. reported to her. The circuit court did not abuse its discretion in finding the state complied with Rule 25.03, and Loper has not demonstrated fundamental unfairness occurred when Dr. Quattromani testified. This point is denied.

**E.S.L.'s Prior Bad Acts**

Loper avers the circuit court plainly erred in sustaining the state's objection and failing to admit evidence of E.S.L.'s prior misconduct because it was logically and legally relevant to show the jury a complete picture of the events that occurred. Loper claims he was prejudiced because he was unable to present a complete defense, resulting in manifest injustice. Because Loper failed to preserve this claim by not including it in his new trial motion, it is reviewable only for plain error. Rule 30.20.

Prior to trial, the state sought to exclude testimony regarding an incident that occurred two years after the charged offenses in which E.S.L. confronted Loper and his pregnant girlfriend at a restaurant and attempted to assault Loper with a tire iron. Loper sought to present this evidence to: (1) refute Schiller-Baker's testimony about the cycle of violence; (2) demonstrate E.S.L. did not "fit the mold" of domestic assault victims because she was obsessed with Loper; and (3) show E.S.L. did not fear Loper. The circuit court sustained the state's motion, ruling the incident was "too far removed." When the circuit court refused to permit Loper to elicit this evidence during E.S.L.'s testimony, he made an offer of proof during which E.S.L. admitted the conduct.

25

Loper does not argue this evidence is admissible to test E.S.L.'s veracity regarding the charged crimes. Instead, Loper maintains this evidence was necessary to present a complete picture of the events that occurred during the parties' relationship. "[E]vidence of uncharged crimes that are part of the circumstances or the sequence of events surrounding the offense charged may be admissible 'to present a complete and coherent picture of the events that transpired.'" *State v. Miller*, 372 S.W.3d 455, 474 (Mo. banc 2012) (quoting *State v. Primm*, 347 S.W.3d 66, 70 (Mo. banc 2011)).

The circuit court did not plainly err in excluding this evidence as being too far removed when the tire iron incident occurred more than two years after the charged offenses. E.S.L.'s actions two years after the charged offenses do not demonstrate her state of mind at the time Loper assaulted her, which would not achieve any of the aims he purported to demonstrate by offering this evidence. Moreover, Loper testified the parties had a tumultuous relationship in which he described E.S.L. being violent toward him, which, if the jury had believed it, demonstrated E.S.L.'s state of mind during their relationship. This point is denied.

## Conclusion

The circuit court's judgment is affirmed.

_____
GEORGE W. DRAPER III, Chief Justice

All concur.

26