

# Missouri Court of Appeals
## Southern District

### In Division

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| vs. | ) | No. SD37531 |
| | ) | |
| JANTZEN BLAKE STRICKLAND, | ) | **Filed: October 2, 2023** |
| | ) | |
| Defendant-Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF IRON COUNTY

The Honorable Megan K. Seay, Judge

### <u>AFFIRMED</u>

Jantzen Blake Strickland ("Mr. Strickland") appeals the trial court's judgment convicting him of one count of misdemeanor trespass, three counts of assault in the third degree against a special victim, and one count of resisting arrest following a jury trial. *See* sections 565.054, 569.140, and 575.150.[1] We affirm the trial court's judgment.

### Factual Background and Procedural History

In August 2020, Mr. Strickland arrived unannounced at the home of his grandparents and aunt, T.S., in Ironton, saying he had nowhere to go and needed somewhere to stay. His grandparents and T.S. allowed him to stay for "awhile." A few

---

[1] All references to statutes are to RSMo Cum.Supp. 2022, unless otherwise indicated.

days later, Mr. Strickland "left real early" and, when he came back later that evening, he was "just all out of sorts and he was just not himself." He "blew up" when his family talked to him. When they fixed him dinner, he responded, "I don't want this f'n s-h-i…" and threw his plate. Mr. Strickland then pulled a knife from the drawer and "was rolling it" with a "really weird look on his face." T.S. was fearful for her parents because it seemed like Mr. Strickland had "just snapped." After T.S. told Mr. Strickland to calm down, he went out the door, came back in, and "got up in [her] face." T.S. then called 911. An officer came to the house, talked to Mr. Strickland, and Mr. Strickland left the house with all his things around 9:30 p.m.

Sometime later that evening, T.S. received a text from a neighbor telling her that Mr. Strickland was "up here." T.S. called 911 again at 11:30 p.m. T.S. saw the officer arrive and could see him talking with Mr. Strickland. After that, Mr. Strickland left the area, and T.S. went to bed.

The next morning, on August 22, 2020, T.S. got up and saw Mr. Strickland sleeping on a bed in a room by the front hall. T.S. called 911. When the officer arrived, he asked Mr. Strickland to gather his belongings and leave because he was not supposed to be on the property. Mr. Strickland gathered his belongings and went outside. The officer issued him a trespassing citation and directed Mr. Strickland not to come back on the property. Mr. Strickland subsequently left.

T.S. was in the shower later that same day when she heard Mr. Strickland's voice. She got out of the shower and told him to leave again. Mr. Strickland was yelling at his grandmother, telling her she did not live there and that "[t]his was [his] house." The officer came into the house again to escort Mr. Strickland outside. When they got out on

the porch, the officer took Mr. Strickland's left arm and advised him he was being placed under arrest. The officer placed the first handcuff on Mr. Strickland's left wrist. As the officer tried to handcuff Mr. Strickland's right wrist with the second handcuff, he stiffened and pulled away. Mr. Strickland was escorted to the ground by four officers on the scene. He kicked one officer in his left arm, kicked another officer in his left shin, and bit a third officer on his right wrist. A fourth officer delivered six blows with his fists and knees to Mr. Strickland's side until he gave up his arm, and the officer was able to get it behind his back. One of the officers punched Mr. Strickland in the face with a closed right hand fist and gave him loud clear instructions to not bite him and stop resisting. Mr. Strickland was then placed in leg restraints to prevent him from trying to run.

During this encounter, T.S. observed Mr. Strickland outside "thrashing himself like temper tantrums" and not doing what the officers asked. An ambulance came to check on Mr. Strickland because he had "thrashed himself on the ground" and had scrapes and cuts from resisting arrest. EMS responders bandaged up his scrapes and turned him over to the officers for transport to the jail. When Mr. Strickland and the officers arrived at the jail, he tried to "hop off." The officers were able to grab him and start walking toward the sheriff's office. Mr. Strickland quit walking, so the officers had to physically carry him to the booking area. Once inside, Mr. Strickland continued to display "very vulgar agitated behavior" and remained "not cooperative[.]" An officer handcuffed his feet apart on the bench and his hands to the back of the wall to immobilize him.

3

At trial, in its opening statement to the jury, the State told the jury that the evidence would show that arresting officers "transport[ed] [Mr. Strickland] to the jail where he continue[d] to resist physically[,] making it impossible for the jailers and deputies to even do little tasks like taking the booking photo or signing off on standard paperwork that's part of the booking process."

Instead of objecting to that characterization, defense counsel, in her opening statement to the jury, told the jury that it would hear evidence that jail personnel

> did not follow proper procedure admitting [Mr. Strickland] into the jail. Instead of standing him up and taking a picture of his face like every other person that's booked into the Iron County Jail, no photo was taken. No photo was taken on [sic] Mr. Strickland with his four injuries to his head and the bandages wrapped across his face.

The parties stipulated at trial that no booking photograph of Mr. Strickland was taken.

The jury found Mr. Strickland guilty on all charges. This timely appeal followed.

## Point on Appeal

Mr. Strickland's only point on appeal claims the trial court abused its discretion by overruling his objection to the relevancy of one arresting officer's, E.M.'s, testimony that "sometimes" arrestees "are so unruly you can't get" a booking photo taken because that testimony was "speculative and more prejudicial than probative."

## Standard of Review

> We review "the admission or exclusion of evidence at trial [ ] for abuse of discretion." [*State v.*] *Ellis*, 512 S.W.3d [816,] 825 [(Mo. App. W.D. 2016)] (citing [*State v.*] *Madorie*, 156 S.W.3d [351,] 355 [(Mo. banc 2005)]). A trial court "abuses its discretion only if its decision to admit or exclude evidence is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." [*State v.*] *Minor*, 648 S.W.3d [721,] 733 [(Mo. banc 2022)] (quoting [*State v.*] *Blurton*, 484 S.W.3d [758,] 769 [(Mo. banc 2016)]) (internal quotation omitted). Our review is not just for mere error, but also prejudice. *Id.* "Trial

4

court error in the admission of evidence is prejudicial if the error so influenced the jury that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion without the error." *State v. Suttles*, 581 S.W.3d 137, 145 (Mo. App. [E.D.] 2019) (quoting *State v. McWilliams*, 564 S.W.3d 618, 629-30 (Mo. App. [W.D.] 2018)).

***State v. Hansen***, 660 S.W.3d 45, 52 (Mo. App. S.D. 2023).

<u>Analysis</u>

The testimony given by E.M. that Mr. Strickland challenges on appeal came in response to the State's inquiry into why a booking photograph of Mr. Strickland would not have been taken:

> [STATE]: You said you've been a law enforcement officer for ten years. Is that correct?
>
> [E.M.]: Yes.
>
> [STATE]: Was that entirely in Iron County?
>
> [E.M.]: Yes.
>
> [STATE]: With one agency or another?
>
> [E.M.]: Yes.
>
> [STATE]: During that time are you aware of any times where a booking photo has not been done right when somebody is brought in?
>
> [E.M.]: There's several instances.
>
> [STATE]: And why is that? Why is a booking photo sometimes not done right when someone's brought in?
>
> [DEFENSE]: Judge I'm going to object to relevance unless it's related to this case.
>
> THE COURT: I am going to overrule and allow it. I believe that you opened that up in your opening.
>
> [STATE]: Do I need to repeat the question?

5

[E.M.]: No, you said the reason why they're not? When you bring somebody in that's either; the whole point of the booking photo is to have their [sic] basically their photo goes with their booking sheet and they have to be willing to stand still for you to take a picture. So I mean if they're intoxicated, they just want to fight and they're unruly. Unless they're willing to stand in front of that camera on their own you can't take a picture of them. That's just no different than sometimes you bring people in and they're so unruly you can't get them to dress out of their civilian clothing. You have to put them in the cell in their clothes. You have no choice unless you dress them. So there are those instances.

Mr. Strickland argues the reference to an unidentified someone being "unruly" is speculative and not legally relevant.[2] Evidence is legally relevant when its probative value outweighs its prejudicial effect. ***State v. Wood***, 580 S.W.3d 566, 575 (Mo. banc 2019). We find that Mr. Strickland's opening statement claim, that jail personnel "did not follow proper procedure [in] admitting [Mr. Strickland] into the jail," allowed the trial court to reasonably conclude that E.M.'s challenged testimony was more probative than prejudicial.

As the trial court noted, a party may invite the admission of evidence "with a theory presented in an opening statement[.]" ***Id.*** at 577 (quoting ***State v. Shockley***, 410

---

[2] The State claims this point on appeal is not preserved because Mr. Strickland waived his claim on appeal by failing to object at the "earliest opportunity" during the State's opening statement. "[O]bjections must be made at the earliest possible opportunity" to preserve a claim for appeal, but Mr. Strickland did not need to object to the State's description of his behavior to challenge the admission of E.M.'s testimony at trial. ***State v. Neighbors***, 502 S.W.3d 745, 748 (Mo. App. W.D. 2016). Whereas the State's opening statement directly accused Mr. Strickland of not complying during the booking process, the State asked E.M. to opine on why booking photographs are "sometimes not done" with no connection to the facts of Mr. Strickland's case. The opening statement and question to E.M. address two different issues: whether Mr. Strickland obstructed the taking of his booking photograph and why booking photographs may generally not be available. Mr. Strickland objected to E.M.'s testimony as irrelevant and speculative at the earliest opportunity after the State's question, thus preserving his claim for appeal.

6

S.W.3d 179, 194 (Mo. banc 2013)); *State v. Gott*, 523 S.W.3d 572, 580 (Mo. App. S.D. 2017) ("Evidence that might otherwise be inadmissible, however, can become admissible when a party opens the door to that evidence with a theory presented in opening statements."). A criminal defendant similarly cannot complain about any alleged error he or she joined in or acquiesced to through his or her own conduct at trial. *State v. Barnes*, 583 S.W.3d 458, 462 (Mo. App. S.D. 2019); *see also State v. Griffin*, 876 S.W.2d 43, 45 (Mo. App. E.D. 1994) ("[T]he defense cannot inform the jury in *voir dire* that the State will present certain evidence, not object to identical evidence mentioned in the State's opening statement, and then object when the State seeks to elicit the same evidence from a witness at trial.").

The State's opening statement asserted that law enforcement did not take a booking photograph because of Mr. Strickland's continued resistance. Rather than object to this characterization, defense counsel decided to respond to the State's assertion in her opening statement with her own theory on why Mr. Strickland's booking photo was not taken: "Instead of standing him up and taking a picture of his face like every other person that's booked into the Iron County Jail, no photo was taken. No photo was taken on [sic] Mr. Strickland with his four injuries to his head and the bandages wrapped across his face."

The defense theory was that the arresting officers "didn't follow rules[,]" were overly "aggressive[,]" and allegedly did not want a booking photograph to show the extent of his injuries. Defense counsel's closing argument reiterated this theme by calling the officers "the initial aggressors[.]" By interjecting this theory, the defense made an explanation by the State for the missing booking photograph "logically and

legally relevant to respond to [Mr. Strickland's] challenge[.]"[3] *State v. Hitchcock*, 329 S.W.3d 741, 751 (Mo. App. S.D. 2011) (finding testimony of prior bad acts admissible where a criminal defendant addressed accusations of abuse in his opening statement instead of objecting to the prosecutor's opening statement). The trial court did not abuse its discretion in admitting E.M.'s testimony.

Moreover, even if the evidence was erroneously admitted, it was not prejudicial. Evidence is not prejudicial where similar evidence has otherwise come into evidence without objection. *State v. Stufflebean*, 548 S.W.3d 334, 350 (Mo. App. E.D. 2018); *State v. Collis*, 139 S.W.3d 638, 641 (Mo. App. S.D. 2004). A different officer testified, without objection, that booking photographs are "[g]enerally" not taken if the person being booked "does not cooperate with the booking process[.]" In addition, five witnesses other than E.M. recounted Mr. Strickland as struggling during arrest and not doing what law enforcement asked. Given this other witness testimony and Mr. Strickland's stipulation there was no jail booking photograph, E.M.'s testimony was cumulative to other evidence in the case that Mr. Strickland's own actions resulted in the lack of a booking photograph. Any error in the admission of E.M.'s testimony was therefore harmless.

---

[3] E.M.'s testimony would have been admissible even if Mr. Strickland had not raised the issue of police misconduct. Law enforcement may testify on "their observation of a fact based on the witness' experience as a police officer." *State v. Loper*, 609 S.W.3d 725, 733-34 (Mo. banc 2020) (quoting *State v. Galvin*, 483 S.W.3d 462, 467 (Mo. App. E.D. 2016)). E.M.'s testimony as to why a booking photograph would be unavailable was accordingly informed by his decade of experience as a law enforcement officer in Iron County.

Mr. Strickland's single point relied on is denied, and the trial court's judgment is affirmed.

JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

JACK A. L. GOODMAN, C.J. – CONCURS

DON E. BURRELL, J. – CONCURS